UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.

AARON SILBERMAN, an individual, and         )
MISIL MIRACLE LLC, a Florida limited liability  )
company                                       )
       Plaintiffs,   )
           )
   vs.                                   )
           )
MIRACLE LEAF HEALTH CENTERS, CORP.           )
a Florida corporation, and                    )
DAVID QUINTANA, an individual,                )
jointly and severally,                        )
           )
       Defendants.  )
_____/

## COMPLAINT

Plaintiffs, Aaron Silberman ("Silberman") and Misil Miracle LLC ("Miracle") (Silberman and Misil Miracle are collectively hereafter referred to as "Plaintiffs"), by and through their undersigned counsel, bring this Complaint against Defendants, Miracle Leaf Health Centers, Corp. ("MLHC"), and David Quintana ("Quintana") (MLHC and Quintana are collectively hereafter referred to as "Defendants"), and state as follows:

## NATURE OF THE ACTION

1. This action arises out of the intentional misrepresentations, untrue statements, and fraudulent omissions made by Defendants to induce Plaintiff Miracle to invest in a private offering of securities. Plaintiff Miracle invested funds in connection with the offering but never received the securities it bargained for from Defendant MLHC. Nevertheless, even if Defendant MLHC

had performed under the Subscription Agreement (as defined below) by issuing to Plaintiff Miracle the securities it bargained for, said securities were purchased by Plaintiff Miracle in reliance on Defendants' intentional and material misrepresentations, untrue statements, and fraudulent omissions. Defendant MLHC breached the Subscription Agreement by failing to provide Plaintiff Miracle the promised securities, and, despite its demands, Plaintiff Miracle's funds were never returned. Furthermore, Plaintiff Silberman, a member and manager of Plaintiff Miracle, was offered employment with Defendant MLHC pursuant to the Employment Agreement (as defined below) that had a two (2) year term with an option for an additional two (2) year extension, which option was Plaintiff Silberman's to exercise in his sole and absolute discretion. Defendant MLHC breached the Employment Agreement by failing to make the wage payments to Plaintiff Silberman required to be made thereunder.

## JURISDICTION AND VENUE

2. Subject matter jurisdiction exists pursuant to 28 U.S.C. §1331 over Plaintiffs' cause of action founded upon 15 U.S.C. § 78j(b), and 17 C.F.R. § 240.10b-5 promulgated thereunder.

3. This Honorable Court has supplemental jurisdiction over Plaintiffs' pendent state claims pursuant to 28 U.S.C §1367 because they are directly related to Plaintiffs' federal claims and form part of the same case or controversy.

4. Pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, venue for this action properly lies in this Honorable Court because the transactions, acts, practices, and course of business giving rise to Plaintiffs' claims took place in Miami-Dade County, Florida, because at all material times hereto, Defendants conducted business and maintained their principal place of business in Miami-Dade County, Florida, and because at all times material hereto, Defendant Quintana resided in Miami-Dade County, Florida.

5. Defendants, directly or indirectly, used the means or instruments of interstate commerce or the mails in connection with the acts described in this Complaint.

6. All conditions precedent to the initiation of the claims set forth below have been performed, satisfied, excused, or waived.

7. Plaintiffs have retained the undersigned attorneys to represent them in this action and have agreed to pay reasonable attorneys' fees and costs for such legal services.

## PARTIES

8. Plaintiff Silberman is an individual residing in Miami-Dade County, Florida and is *sui juris*.

9. Plaintiff Miracle is a Florida limited liability company with its principal place of business in Broward County, Florida. At all times material hereto, Plaintiff Miracle transacted business in Miami-Dade County, Florida, and in Broward County, Florida.

10. Defendant MLHC is a Florida corporation with its principal place of business in Miami-Dade County, Florida. At all times material hereto, Defendant MLHC transacted business in Miami-Dade County, Florida.

11. Defendant Quintana is an individual residing in Miami-Dade County, Florida and is *sui juris*.

12. Defendant Quintana is the founder, majority shareholder, CEO, and President of the Board of Directors of Defendant MLHC.

13. At all times material hereto, Defendant Quintana exercised operational and financial control over Defendant MLHC's day-to-day operations, including the offering and sale of securities to Plaintiff Miracle.

## FACTUAL BACKGROUND

14. Defendant MLHC was established as a holding company to acquire, directly or indirectly, all of the membership interest or issued and outstanding capital stock of Miracle Leaf Franchising, LLC, MLHCF, LLC, Miracle Leaf Corp., Miracle Leaf CBD Corp., and MLHCM, LLC (collectively with Defendant MLHC, the "Miracle Leaf Companies"). The Miracle Leaf Companies operate and franchise board certified Florida medical health centers that provide consultations to patients seeking the use of medical marijuana to treat various conditions ("Health Centers"). In addition to the physical consultations performed by such doctors, patients of Health Centers also have access to additional services, including IV Infusion Therapy, CBD Massage Therapy, CBD Infused Oxygen Therapy, and Hormone Replacement Therapy. The Miracle Leaf Companies and its franchisees also sell CBD products that are sold at the storefront retail level of the Health Centers.

15. On May 1, 2019, David Quintana, in his individual capacity and in his capacity as a member of MLHCF, LLC and MLHCM, LLC, and Maria Eleen Beisner, in her capacity as a member of MLHCM LLC, Miracle Leaf Franchising, LLC, and Miracle Leaf Corp., filed a lawsuit (styled as *David Quintana, et al. v. MLHCF, LLC, et al.,* Case No. 2019-013144-CA-43 pending in the Eleventh Judicial Circuit in and for Miami-Dade County and referred to herein as the "Lawsuit"), against MLHCF, LLC, MLHCM, LLC, Go Green Clinic, LLC, Michael Feldenkrais, Lon Rosen, Greg Rosen, Richard Drucker, Giana Tirado, and Darlene Platt.

16. On May 15, 2019, Plaintiff Silberman and Defendant MLHC entered into an Employment Term Sheet ("Employment Agreement"), pursuant to which Defendant MLHC hired Plaintiff Silberman as its Chief Operations Officer ("COO"). The Employment Agreement entitles Plaintiff Silberman to an annual salary of One Hundred Twenty Thousand Dollars ($120,000.00), a monthly vehicle allowance of Five Hundred Fifty Dollars ($550.00) per month, and Plaintiff Silberman's participation in Defendant MLHC's general stock option plan and medical plan,

should any such plan be created by Defendant MLHC. The Employment Agreement had a two (2) year term, which term could be renewed for an additional two (2) years at Plaintiff Silberman's sole option and upon the same terms and conditions as the original term. Under the Employment Agreement, Plaintiff Silberman's compensation was due and payable "upon execution of term sheet." Defendant MLHC ceased making payments due to Plaintiff Silberman under the Employment Agreement on June 14, 2019. A copy of the Employment Agreement is attached to this Complaint as Exhibit A.

17. On June 5, 2019, Plaintiff Silberman, on behalf of Plaintiff Miracle, executed a subscription agreement (the "Subscription Agreement") pursuant to which Defendant MLHC agreed to sell to Plaintiff Miracle, and Plaintiff Miracle agreed to subscribe and purchase from Defendant MLHC, one million (1,000,000) shares of Defendant MLHC's common stock for a total purchase price of Five Hundred Thousand Dollars ($500,000.00). A copy of the Subscription Agreement is attached to this Complaint as Exhibit B.

18. On June 13, 2019, the parties to the Lawsuit executed a Settlement Agreement and Release (the "Settlement Agreement").

19. On June 13, 2019, the parties to the Lawsuit, together with Carlton Fields, P.A. ("Escrow Agent"), executed an Escrow Agreement (the "Escrow Agreement").

20. The Escrow Agent under the Escrow Agreement is holding Three Hundred Fifty Thousand Dollars ($350,000.00) in escrow, which funds comprise a portion of the Five Hundred Thousand Dollar ($500,000.00) investment made by Plaintiff Miracle in Defendant MLHC (the "Miracle Leaf Escrowed Funds"), as memorialized by the Subscription Agreement.

21. Upon Plaintiff Silberman's commencement of his duties as COO of Defendant MLHC, he discovered that Defendants had made numerous material omissions, numerous untrue statements, and numerous material misrepresentations in the Subscription Agreement and otherwise, including, without limitation:

I. Failure to disclose incurred financial liabilities

(a) Leon Hirzel, Esq.: outstanding balance of Eight Thousand Five Hundred Dollars ($8,500.00).

(b) Craan Designs: outstanding balance of Nineteen Thousand Dollars ($19,000.00).

II. Failure to disclose legal matters

(a) Eduardo Correa Bianchi v. David Quintana.

   (i) Local Case # 2019-009430-SP-23

(b) Desmond Junior Wilson v. Miracle Leaf Franchise, LLC ET. AL.

   (i) Local case #2019-005084-CA-01

(c) IHEARTMEDIA + Entertainment, Inc. v. Miracle Leaf Corp.

   (i) Local Case #2019-012546-CC-05

III. Failure to disclose and/or misrepresentation of financial and tax matters

(a) Miracle Leaf Companies do not have a centralized POS system and cannot accurately track, determine, or collect franchise royalty payments, thereby rendering all representations made by Defendants as to the finances of Miracle Leaf Companies, whether orally or in writing, intentionally misleading.

(b) Defendant Quintana comingles his personal account with the accounts of Miracle Leaf Companies and pays off his personal expenses directly from the accounts of Miracle Leaf Companies, thereby making financial representations made by Defendants intentionally misleading. In the months of April and May of 2019, Defendant Quintana's expenses paid from the Miracle Leaf Companies amounted to Seventy-Two Thousand Dollars ($72,000.00).

(c) Defendant Quintana was given a salary of Three Hundred Sixty Thousand Dollars ($360,000.00) on the basis that the Health Center located in Wynwood, Florida – which Health Center was previously owned by Defendant Quintana - had sold over Seven Hundred Sixty

Thousand Dollars ($760,000.00), resulting in profits to Defendant Quintana of Three Hundred Sixty Thousand Dollars ($360,000.00) prior to such Health Center being transferred to Defendant MLHC, directly or indirectly. Defendant Quintana failed to mention that Miracle Leaf Corp.'s merchant account (square) was comingled with several other Miracle Leaf stores, including Miracle Leaf South Beach and Miracle Leaf Pembroke Pines, which omission made his statements intentionally misleading.

(d)     Defendants misrepresented the total company patient count as being in excess of ten thousand (10,000) registered patients, but reports reflect under six thousand six hundred registered patients (6,600).

(e)     Upon information and belief, Miracle Leaf Companies organized as corporations have never filed corporate taxes.

(f)     Upon information and belief, Defendant Quintana has not filed personal taxes in nine (9) years.

IV.     <u>Failed to disclose ownership information</u>

(a)     Defendant Quintana failed to disclose that Miracle Leaf Corp. was previously owned by Michelle Cordoba-Smith.

V.     <u>Failed to disclose Defendant Quintana's criminal background</u>

(a)     Defendants failed to disclose what is, upon information and belief, Defendant Quintana's extensive criminal background, which would result in Defendant Quintana being unable to pass business level 2 background checks. In Florida, the level 2 background check is a fingerprint-based search of records held by law enforcement nationally. Level 2 disqualifying offenses include, but may not be limited to: sexual misconduct, kidnapping, murder, manslaughter, incest, and virtually any charge involving minors or the elderly.

(b) Upon information and belief, Defendants failed to disclose that Defendant Quintana uses credit privacy numbers ("CPNs") to pass level 2 background checks for the purpose of hiding his credit profile, a fraudulent act.

VI. <u>Failed to disclose failure to comply with Federal Franchise Rule</u>

(a) While Annex A to the Subscription Agreement states that the Franchise Disclosure Document ("FDD") is being updated and that no franchises may be sold to prospective franchisees until the FDD complies with the Federal Franchise Rule, Annex A fails to disclose that the FDD previously used by Miracle Leaf Companies to sell franchises never complied with the Federal Franchise Rule, which omission is intentionally misleading and taints all revenue generated by the sale of franchises to date.

22. After discovering the material misrepresentations, untrue statements, and omissions referred to in Paragraph 21 of this Complaint, Plaintiff Silberman immediately notified Defendant Quintana, as CEO of Defendant MLHC, and Alan Grunspan, Esq., Defendant MLHC's attorney, of his desire to rescind the Subscription Agreement. Defendant Quintana indicated that he was agreeable to same.

23. Section 5 of the Escrow Agreement, entitled "Terms of Release," states, "Plaintiffs and the Defendants hereby direct the Escrow Agent to hold the Settlement Payment, provided that the Settlement Payment (or any portion thereof) shall be released from escrow to the Defendants promptly upon the receipt of written notice from the Plaintiffs directing the Escrow Agent to distribute any portion of the Settlement Payment to the Defendants."

24. Upon information and belief, Maria Eleen Beisner – as a Plaintiff in the Lawsuit – has not sent written notice to Escrow Agent directing Escrow Agent to distribute all or any portion of the Settlement Payment to the defendants in the Lawsuit.

25. Section 7(e) of the Escrow Agreement provides, in pertinent part, "should any controversy or dispute arise involving the Parties hereto or any of them or any other person, firm, or entity with respect to this Agreement, the Settlement Agreement, the Settlement Payment or the Assignment….or if the Escrow Agent should be in doubt as to what action to take, the Escrow Agent shall have the right, but not the obligation, in the Escrow Agent's sole discretion to either (i) continue to hold the subject matter of the escrow until the Plaintiffs and the Defendants mutually agree as to its disbursement or until a judgment of a court of competent jurisdiction shall determine the rights of the Plaintiffs and the Defendants, or (ii) to institute a petition for interpleader in any court of competent jurisdiction to determine the rights of the Parties hereto."

26. On June 16, 2019, and June 21, 2019 Plaintiff Silberman, on behalf of Plaintiff Miracle, sent Defendant Quintana and Carlton Fields, P.A., as Escrow Agent under the Escrow Agreement, written directives to keep the Miracle Leaf Escrowed Funds frozen pending further notice. On June 24, 2019, Plaintiff Miracle demanded the return of its investment funds from Defendants. On June 26, 2019, Defendant MLHC, through its counsel, Carlton Fields, P.A., informed Plaintiff Miracle that it would not return its investment funds unless it received additional investment funds to execute on the terms of the Settlement Agreement in the Lawsuit.

27. On June 27, 2019, undersigned counsel sent a letter to Carlton Fields, P.A., as Escrow Agent, directing it, on behalf of Plaintiff Miracle:

> "to maintain the Miracle Leaf Escrowed Funds frozen, until further notice, on account of the numerous and ongoing disputes and controversies that exist between Misil Miracle, [Plaintiff] Silberman and David Quintana, Miracle Leaf Franchising LLC, Miracle Leaf CBD, Corp., Miracle Leaf Corp., and Miracle Leaf Health Centers, Corp. with respect to the Miracle Leaf Escrowed Funds (otherwise referred to as the 'Settlement Payment' in the Miracle Leaf Escrow Agreement). The ongoing disputes and controversies with respect to the Miracle Leaf Escrowed Funds, include, without limitation, the validity of the Misil Miracle Subscription Agreement in light of material misrepresentations and material omissions of disclosures required to be made by Miracle Leaf Health Centers, Corp. pursuant to federal and state securities laws, which material misrepresentations and

material omissions entitle Misil Miracle to rescind the Misil Miracle Subscription Agreement and require that Miracle Leaf Health Centers, Corp. return Misil Miracle's Five Hundred Thousand ($500,000.00) investment, Three Hundred Fifty Thousand ($350,000.00) of which comprises the Miracle Leaf Escrowed Funds. Furthermore, upon information and belief, as of June 26, 2019, Ms. Beisner is not in agreement with the disbursement of the Settlement Payment….In light of this formal notice of dispute as to the Miracle Leaf Escrowed Funds, and in accordance with Section 7(e) of the Miracle Leaf Escrow Agreement, Carlton Fields, having notice that a controversy or dispute exists with respect to the "Settlement Payment," is prohibited from disbursing the Miracle Leaf Escrowed Funds. Pursuant to the terms of the Miracle Leaf Escrow Agreement, Carlton Fields, as escrow agent, must either continue to hold the Miracle Leaf Escrowed Funds in escrow until there is a resolution of the dispute as to the "Settlement Payment" or institute a petition for interpleader in any court of competent jurisdiction."

28. On June 28, 2019, Plaintiff Silberman received notice from Defendant MLHC that he had been removed as a member of the Board of Directors, as COO, and as CFO of Defendant MLHC.

29. Defendants nefariously utilized the material omissions and material misrepresentations to defraud Plaintiffs and as of the filing of this Complaint, refuse to sanitize their fraud by making Plaintiffs whole.

## COUNT I
### Violation of 15 U.S.C. § 78j(b)

30. Plaintiff Miracle re-alleges and incorporates paragraphs one (1) through twenty-nine (29) above as if fully set forth herein.

31. 17 C.F.R. §240.10b-5, a regulation promulgated under 15 U.S.C. 78j(b), provides, in pertinent part:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made,

>  in the light of the circumstances under which they were made, not misleading, or
>
>  (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

32. To obtain Plaintiff Miracle's funds, Defendants misrepresented material facts, omitted statements of material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, and made untrue statements of material facts, as set forth in Paragraph 21 of this Complaint. Defendants knew that their untrue statements were false and made them for the purpose of inducing Plaintiff Miracle's reliance thereon.

33. Defendants' misrepresentations, untrue statements, and omissions were material.

34. Defendants made the misrepresentations, untrue statements, and omissions with the intent to deceive, manipulate, and defraud Plaintiff Miracle.

35. Plaintiff Miracle relied upon Defendants' misrepresentations, untrue statements, and omissions when executing the Subscription Agreement and making the investment in Defendant MLHC. But for Defendants' material misrepresentations, untrue statements, and omissions, Plaintiff Miracle would never have invested in Defendant MLHC.

36. Despite Plaintiff Miracle's demands for a return of its funds, Defendant MLHC has unlawfully retained Plaintiff Miracle's funds.

37. Defendants' misrepresentations, untrue statements, and omissions were made via telephone, email, and in the Subscription Agreement that was delivered via e-mail. Defendants used the means and instrumentalities of interstate commerce to deceive Plaintiff Miracle.

38. Plaintiff Miracle has suffered damages as a result of Defendants misrepresentations, untrue statements, and omissions.

39. Defendants engaged in a course of business which operated as a fraud and deceit upon Plaintiff Miracle.

40. This Count I is also brought against Defendant Quintana pursuant to Section 20(a) of the Exchange Act. *See* 15 U.S. Code § 78t.

41. Section 20(a) of the Exchange Act reads, in pertinent part:

> **(a) Joint and several liability; good faith defense**
> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable (including to the Commission in any action brought under paragraph (1) or (3) of section 78u(d) of this title), unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action. 15 U.S.C.A. § 78t.

42. Defendant Quintana participated in the operation and management of Defendant MLHC, and conducted and participated, directly and indirectly, in the conduct of Defendant MLHC's business affairs. At all times material hereto, Defendant Quintana was aware of the misrepresentations, untrue statements of material facts, and omissions of material facts made by Defendant MLHC, which misrepresentations, untrue statements, and omissions are described in Paragraph 21 of this Complaint.

43. At all times material hereto, Defendant Quintana was a "controlling person" of Defendant MLHC within the meaning of Section 20(a) of the Exchange Act by virtue of his ownership of Defendant MLHC, beneficial or otherwise, and/or his positions as director, senior officer and/or authorized representative of Defendant MLHC.

44. Defendant Quintana was a culpable participant in the violation of 15 U.S.C. § 78j(b) of the Exchange Act by Defendant MLHC as alleged in this Count I of this Complaint based on his ownership interest, beneficial or otherwise, in Defendant MLHC and having otherwise participated in the process which directly resulted in Defendant MLHC's fraudulent sale of

securities to Plaintiffs.

45. By reason of his conduct and position, Defendant Quintana is liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Defendant MLHC.

WHEREFORE, Plaintiff Miracle demands judgment against Defendants, jointly and severally, for actual and compensatory damages, pre-judgment interest and post–judgment interest at the maximum rate allowable by law, and for any additional statutory relief and such other relief this Honorable Court deems just and proper.

## COUNT II
### Violation of Section 517.301, Florida Statutes

46. Plaintiff Miracle re-alleges and incorporates paragraphs one (1) through twenty-nine (29) above as if fully set forth herein.

47. Section 517.301(1)(a), Florida Statues provides, in pertinent part:

> It is unlawful and a violation of the provisions of this chapter for a person:
>
> (a) In connection with the rendering of any investment advice or in connection with the offer, sale, or purchase of any investment or security, including any security exempted under the provisions of s. 517.051 and including any security sold in a transaction exempted under the provisions of s. 517.061, directly or indirectly:
>
> 1. To employ any device, scheme, or artifice to defraud;
>
> 2. To obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or
>
> 3. To engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a person.

48. To obtain Plaintiff Miracle's funds, Defendants misrepresented material facts, omitted statements of material facts necessary in order to make the statements made, in the light

of the circumstances under which they were made, not misleading, and made untrue statements of material facts, as set forth in Paragraph 21 of this Complaint.

49. Defendants' misrepresentations, untrue statements, and omissions were material.

50. Defendants made the misrepresentations, untrue statements, and omissions with the intent to deceive, manipulate, and defraud Plaintiff Miracle.

51. Plaintiff Miracle relied upon Defendants' misrepresentations, untrue statements of material facts, and omission of material facts when executing the Subscription Agreement and making the investment in Defendant MLHC. But for Defendants' material misrepresentations, untrue statements, and omissions, Plaintiff Miracle would not have invested in Defendant MLHC or executed the Subscription Agreement.

52. Despite Plaintiff Miracle's demands for the return of its funds, Defendant MLHC has unlawfully retained them.

53. Plaintiff Miracle has suffered damages as a result of Defendants' misrepresentations, untrue statements, and omissions.

54. Defendants engaged in a course of business which operated as a fraud and deceit upon Plaintiff Miracle.

55. Defendants have violated Section 517.301, Florida Statutes, and are liable for damages.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for actual and compensatory damages, attorneys' fees and costs pursuant to Fla. Stat. § 517.211(6), pre-judgment interest and post–judgment interest at the maximum rate allowable by law, and for any additional available statutory relief and other relief that this Honorable Court deems just and proper.

## COUNT III
## Fraudulent Inducement

56. Plaintiff Miracle re-alleges and incorporates paragraphs one (1) through twenty-nine (29) above as if fully set forth herein.

57. Defendants failed to disclose the information detailed and described in Paragraph 21 of this Complaint to Plaintiff Miracle prior to or at the time that Plaintiff Miracle executed the Subscription Agreement and invested in Defendant MLHC.

58. These omissions and misrepresentations were intentional and material.

59. Defendants knew that their untrue statements and misrepresentations were false and made them for the purpose of inducing Plaintiff Miracle's reliance thereon when deciding to acquire the securities that Defendant MLHC offered by entering into the Subscription Agreement.

60. Defendants intended for Plaintiff Miracle to rely upon their fraudulent misrepresentations and omissions in entering into the Subscription Agreement and investing in Defendant MLHC.

61. Plaintiff Miracle justifiably and reasonably relied upon Defendants' fraudulent misrepresentations and omissions when entering into the Subscription Agreement and investing in Defendant MLHC.

62. Plaintiff Miracle suffered damages as a result of Defendants' fraud upon it.

WHEREFORE, Plaintiff Miracle demands judgment against Defendants, jointly and severally, for actual and compensatory damages, attorneys' fees and costs pursuant to Fla. Stat. §517.211(6), pre-judgment interest and post–judgment interest at the maximum rate allowable by law, and for any additional available statutory relief and other relief that this Honorable Court deems just and proper.

## COUNT IV
**Breach of Employment Agreement**

63. Plaintiff Silberman re-alleges and incorporates paragraphs one (1) through twenty-nine (29) above as if fully set forth herein.

64. The Employment Agreement is an enforceable contract.

65. Plaintiff Silberman has complied with all his obligations under the Employment Agreement.

66. All conditions required by the Employment Agreement for Defendant MLHC's performance have occurred.

67. Under the Employment Agreement, Plaintiff Silberman was to receive bi-weekly installments of Four Thousand Six Hundred Fifteen Dollars and Thirty-Eight Cents ($4,615.38) (the "COO Salary Payments").

68. Defendant MLHC breached the Employment Agreement by:

   a) Failing to make the COO Salary Payments, commencing with the COO Salary Payments required to be made on June 14, 2019; and

   b) Terminating Plaintiff Silberman's employment effective June 25, 2019, with nearly two (2) years remaining in the term of the Employment Agreement. Plaintiff Silberman had the option, to be exercised in his sole discretion, to extend the term of the Employment Agreement for an additional two (2) years.

69. Plaintiff Silberman has suffered damages as a direct and proximate cause of Defendant MLHC's material breach of the Employment Agreement.

WHEREFORE, Plaintiff Silberman respectfully demands the entry of a final judgment in his favor and against Defendant MLHC for damages equal to the value of the Employment Agreement, pre-judgment interest and post–judgment interest at the maximum rate allowable by law, and such further relief as this Honorable Court deems just and proper.

## COUNT V
**Breach of Subscription Agreement**

70. Plaintiff Miracle re-alleges and incorporates paragraphs one (1) through twenty-nine (29) above as if fully set forth herein.

71. The Subscription Agreement is an enforceable contract.

72. Plaintiff Miracle complied with all of its obligations under the Subscription Agreement by tendering Five Hundred Thousand Dollars ($500,000.00) to Defendant MLHC, which payment Defendant MLHC accepted and deposited.

73. All conditions required by the Subscription Agreement for Defendant MLHC's performance have occurred.

74. Defendant MLHC breached the Subscription Agreement by failing to issue and deliver shares of Defendant MLHC to Plaintiff Miracle as required by Section 4 of the Subscription Agreement.

75. Defendant MLHC's breach has caused Plaintiff Miracle to incur damages.

76. Plaintiff Miracle is entitled to recover from Defendant MLHC damages in an amount to be proven at trial, including but not limited to, the amount tendered to Defendant MLHC pursuant to the Subscription Agreement, with interest.

WHEREFORE, Plaintiff Miracle demands judgment against Defendant MLHC for actual and compensatory damages, and such other relief as this Honorable Court deems just and proper.

## COUNT VI
**Unjust Enrichment**

77. Plaintiffs re-allege and incorporate paragraphs one (1) through twenty-one (29) above as if fully set forth herein.

78. If Plaintiffs do not have an adequate remedy at law, Plaintiffs alternatively seek recovery based upon equitable principles.

79. By providing Five Hundred Thousand Dollars ($500,000.00) in investment funds to Defendant MLHC, and by foregoing other employment opportunities in order to work for Defendant MLHC, Plaintiffs Miracle and Silberman, respectively, conferred a benefit upon Defendant MLHC.

80. At all times material hereto, Defendant MLHC knowingly accepted and appreciated the benefits conferred by Plaintiffs upon it by retaining Plaintiff Miracle's Five Hundred Thousand Dollar ($500,000.00) investment and Plaintiff Silberman's time, skills, and resources, without providing anything of value in return to Plaintiffs.

81. Defendant MLHC accepted and retained the benefits conferred by Plaintiffs under circumstances that make it inequitable for Defendant MLHC to do so without providing fair value for them.

82. Defendant MLHC has been unjustly enriched by the benefits conferred upon it by Plaintiffs.

WHEREFORE, Plaintiffs respectfully demand the entry of a final judgment in their favor and against Defendant MLHC, for restitution, pre-judgment interest and post–judgment interest at the maximum rate allowable by law, and for such other relief as this Honorable Court deems just, equitable, and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues so triable.

Date this 9th day of July 2019.

Respectfully submitted,

**G&F LAW GROUP, LLP**
Alexander C. Flint, Esq.
Florida Bar No. 117715
I. Albert Gonzalez, Esq.
Florida Bar No. 695971
15807 Biscayne Blvd, Suite 217
North Miami Beach, FL 33160
Telephone: (305) 503-9073
Fax: (305) 397-2716
acf@gflawgroup.com
iag@gflawgroup.com

/s/ Alexander C. Flint
Alexander C. Flint, Esq.

/s/ I. Albert Gonzalez
I. Albert Gonzalez, Esq.